ORIGINAL

FILED-USDC-NDTX-DA
'25 SEP 16 PM 1:59

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. |
| v. | |
| JOEL IPINA | 3-25CR-421-B |

### FACTUAL RESUME

In support of Joel Ipina's plea of guilty to the offense in Count One of the Information, Ipina, the defendant, Andrenette Sullivan, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

### ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Information, charging a violation of 18 U.S.C. § 666(a)(1)(A), that is, Theft Concerning Programs Receiving Federal Funds, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First:*  That the defendant was an agent of the Dallas Housing Authority;

*Second:*  That the Dallas Housing Authority was a local government agency that received in any one-year period, benefits in excess of $10,000 under a federal program involving a grant or other form of federal assistance;

*Third:*  That the defendant embezzled, stole, obtained by fraud, otherwise without authority knowingly converted to the use of any person other than the rightful owner without authority, or intentionally

---

[1] Fifth Circuit Pattern Jury Instruction 2.33A (5th Cir. 2024).

Factual Resume—Page 1

misapplied property that was owned by, or under the care, custody, or control of the Dallas Housing Authority; and

*Fourth:*     That the property had a value of $5,000 or more.

### STIPULATED FACTS

1.     Joel Ipina admits that on or about February 9, 2023, in the Dallas Division of the Northern District of Texas, he, being an agent of a local government agency, that is, the Dallas Housing Authority ("the DHA"), an agency receiving federal benefits in excess of $10,000 annually during the relevant time, knowingly embezzled, stole, obtained by fraud, otherwise without authority knowingly converted to the use of a person not the rightful owner, and intentionally misapplied property worth at least $5,000 and owned by and under the care, custody, and control of the DHA, that is $15,200 in DHA funds, in violation of 18 U.S.C. § 666(a)(1)(A).

2.     Ipina admits and agrees that the DHA was a local government agency located in the Dallas Division of the Northern District of Texas.

3.     Ipina admits and agrees that DHA received benefits under various federal programs involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of federal assistance, including, benefits from the United States Department of Housing and Urban Development, in excess of $10,000 in calendar years 2022 and 2023.

4.     Ipina admits and agrees that he was employed by the DHA from approximately 1995 until January 2024.  Beginning in approximately 2013, he began working as a maintenance supervisor for DHA.  In this role, he was an agent of DHA in that he had the authority to procure and approve contracts for maintenance work on DHA

properties he supervised.

5.      Ipina further admits and agrees whenever a property under DHA's supervision required maintenance, a work order was submitted through the DHA system. Residents could submit work orders themselves, or a maintenance supervisor, like Ipina, could submit a work order on behalf of a property. As a maintenance supervisor, Ipina had authority to determine whether a work order could be completed in house by DHA maintenance employees or whether an outside contractor was required. When an outside contractor was required, Ipina would solicit bids and secure a vendor. Ipina had the option of selecting a vendor from a DHA approved list or contacting a vendor directly.

6.      According to the DHA procurement policies and procedures in place during Ipina's employment, maintenance expenditures of more than $10,000 required three competitive bids and upper-level approval. Maintenance expenditures of $10,000 or less generally only required a single bid and approval from the regional property manager. When a project was less than $5,000, a maintenance supervisor, like Ipina, could approve the contract without reporting what contractor was selected.

7.      Once a work requisition was approved by a maintenance supervisor or regional property manager, DHA procurement would verify the vendor and issue the purchase order. The contractor would then perform the work and submit a final invoice to DHA. Once a maintenance supervisor or regional manager approved that the contractor completed the work, DHA would pay the vendor via check or Automated Clearing House.

8.     Ipina admits and agrees that DHA had a policy in place to prevent its employees from engaging in outside employment that posed a conflict of interest. He further admits that he understood that DHA would not authorize him to award maintenance contracts to a vendor where, unbeknownst to DHA, Ipina himself would personally benefit due to having an ownership or financial interest in the vendor.

9.     Ipina admits and agrees that B.I.G. Construction, LLC ("B.I.G. Construction") was a company he created and controlled. At all relevant times, Ipina had a 100% ownership interest in the company. Additionally, Ipina agrees that he controlled all email accounts and bank accounts associated with B.I.G. Construction. Ipina further admits that he did not disclose his relationship to B.I.G. Construction to DHA at any point during his employment as required.

10.     Ipina admits and agrees that beginning in or about August 2019 and continuing until about February 2024, he operated a scheme by which he generated maintenance work orders for properties he managed and arranged for B.I.G. Construction to be awarded the purported work. When Ipina submitted a bid on behalf of B.I.G. Construction, he would either approve the bid himself or seek approval from a regional manager. As part of the scheme, Ipina occasionally fabricated less competitive quotes from DHA approved contractors to ensure projects were ultimately awarded to B.I.G. Construction. Every quote B.I.G. Construction submitted to DHA was less than $10,000, with most being less than $5,000.

11.     Ipina admits and agrees that, at some point in his scheme, he caused DHA to send money to B.I.G. Construction for work never completed. For example, in

January 2023, Ipina generated work orders for five different units under his supervision and submitted bids for B.I.G. Construction to perform the alleged work. Those properties included Hidden Ridge #622; Hidden Ridge #923, 3743 High Vista; 1913 New Haven #11; and 4602 Fallon Place #1. Ipina fabricated higher competing bids from DHA approved vendors for each of the five projects and ultimately awarded all five contracts to B.I.G. Construction. Later that month, Ipina submitted invoices for DHA to pay B.I.G. Construction for these projects even though no work was performed. On or about February 9, 2023, Ipina accepted and received into B.I.G. Construction's bank account $15,200 via check for services that were never performed related to these five properties.

12. Ipina admits that between around August 2019 and February 2024 he submitted approximately 112 purchase orders to DHA for maintenance work allegedly completed by B.I.G. Construction. Ipina further admits that, as a result of his scheme, he caused DHA to make 66 payments to B.I.G. Construction for a combined total of $473,641.

13. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Information.

AGREED TO AND STIPULATED on this 16 day of September , 2025.

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

_____
JOEL IPINA
Defendant

_____
ELISE ALDENDIFER
Assistant United States Attorney
Texas Bar No. 24124103
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: (214) 659-8814
Facsimile: (214) 659-8812
elise.aldendifer@usdoj.gov

_____
ANDRENETTE SULLIVAN
Attorney for Defendant